1 | Timothy C. Williams, Esq., SBN 128520
2 | D. Alexander Floum, Esq., SBN 152287
  | THE WILLIAMS FIRM
3 | 1850 Mt. Diablo Blvd., Suite 340
  | Walnut Creek, California 94596
4 | Telephone:  (925) 933-9800
  | Facsimile:  (925) 933-9810
5 | Email: afloum@williams-firm.com

**Filed** ADR

FEB 1 0 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-filing

6

7 | Attorneys for Plaintiff,
  | SKYYTEK CORPORATION, a Florida corporation

8

9 | **UNITED STATES DISTRICT COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

**HRL**

**C09 00594**

11 | SKYYTEK CORPORATION, a Florida )
   | corporation )
12 |              )  VERIFIED COMPLAINT FOR:
   |          Plaintiff,  )
13 |              )  (1)  BREACH OF CONTRACT;
   |              )  (2)  TRADE LIBEL;
14 | v.              )  (3)  LIBEL PER SE;
   |              )  (4)  SLANDER PER SE;
15 |              )  (5)  INTENTIONAL
   | NETSUITE   INC.,   a   Delaware )       INTERFERENCE WITH
16 | corporation;  and DOES 1 through )       CONTRACTUAL
   | 100, inclusive,   )       RELATIONS;
17 |              )  (6)  INTENTIONAL
   |          Defendants.  )       INTERFERENCE WITH
18 |              )       PROSPECTIVE
   |              )       ECONOMIC ADVANTAGE;
19 |              )  (7)  NEGLIGENT
   |              )       INTERFERENCE WITH
20 |              )       CONTRACTUAL
   |              )       RELATIONS;
21 |              )  (8)  NEGLIGENT
   |              )       INTERFERENCE WITH
22 |              )       PROSPECTIVE
   |              )       ECONOMIC ADVANTAGE;
23 |              )  (9)  UNFAIR COMPETITION;
   |              )       AND
24 |              )  (10) INJUNCTIVE RELIEF

DEMAND FOR JURY TRIAL

25

26 |     Plaintiff,  SKYYTEK  CORPORATION,  a  Florida  corporation

27 | ("Plaintiff" or "SKYYTEK"), alleges as follows:

28

## PARTIES

1.    Plaintiff, SKYYTEK, is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Florida, with its principal office located in the City of Miami, County of Dade, State of Florida.

2.    Plaintiff is informed and believes, and thereon alleges, that Defendant, NETSUITE INC., is, and at most times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, and qualified to do, and actually doing, business in the State of California; prior to a date on or about November 19, 2007, it operated as a corporation called NETSUITE, INC., organized and existing under the laws of the State of California, but was then merged into NETSUITE INC. (collectively "NETSUITE").   The principal place of business of NETSUITE is, and at all times relevant to, has been in the City of San Mateo, County of San Mateo, State of California, doing business as NETSUITE.

3.    Plaintiff is informed and believes, and thereon alleges, that, at all times relevant hereto, Defendants, and each of them, were the agents, servants, joint venturers, partners, employees and/or co-conspirators of the other Defendants named herein and that, at all times relevant hereto, each of the Defendants was acting within the course and scope of said relationship with said Defendants.

4.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sue these Defendants by their fictitious names.

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1  Plaintiff is informed and believes, and thereon alleges, that

2  each of the fictitiously named Defendants, Does 1 through 100, is

3  responsible for the acts and omissions alleged herein, and/or

4  otherwise liable to Plaintiff for payment of damages as alleged

5  in this Complaint.  Plaintiff will amend this Complaint to allege

6  their true names and capacities when ascertained.

7                              **JURISDICTION**

8      5.   The district court has diversity jurisdiction over the

9  instant action pursuant to 28 U.S.C. § 1332 because all of the

10  parties are in different states, and the amount in controversy

11  exceeds $75,000.00.

12              **INTRADISTRICT ASSIGNMENT AND VENUE**

13      6.   Paragraph 11.6 of the Netsuite Agreement, as defined

14  below, provides:

> This ... Agreement shall be governed in accordance with
> the laws of the State of California and any controlling
> U.S. federal law. Any disputes, actions, claims or
> causes of action arising out of or in connection with
> this Referral Agreement shall be subject to the
> exclusive jurisdiction of the state and federal courts
> located in San Mateo or Santa Clara County California.

19      7.   Venue is also proper under 28 U.S.C. § 1391(b)(2)

20  and/or (3), as the Netsuite Agreement, as defined below, was

21  entered into and was to be performed in this judicial district,

22  and a substantial part of the events giving rise to these claims

23  occurred in this judicial district, and because Defendant

24  NETSUITE, is subject to personal jurisdiction in this judicial

25  district.  The instant case is of a type proper in this district.

26          **FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

27      8.   Both parties to this action are in the software and

28  technology industry.

9.   Defendant, NETSUITE, is a software provider of on-demand, integrated business management software for small and midsize businesses.

10.  Plaintiff, SKYYTEK, is a highly-regarded provider of business process engineering and implementation of on-demand and enterprise resource planning and customer relationship management software systems.  SKYYTEK is an Accounting Technology VAR 100 winner three years in a row.  Until recently, SKYYTEK was NETSUITE's largest solution provider, won NETSUITE's Partner of the Year for three years straight, and was NETSUITE's only 5-star reseller ever.  Plaintiff had a non-exclusive license to provide and service specialized software by NETSUITE.

The Netsuite Agreement

11.  SKYYTEK and NETSUITE conducted business for many years.

12.  On or about September 28, 2005, SKYYTEK and NETSUITE entered into a "NetSuite Premier Solution Provider Agreement" (the "Netsuite Agreement") wherein SKYYTEK agreed to provide certain services to NETSUITE and NETSUITE's customers in return for certain payments by NETSUITE to SKYYTEK, according to the terms and conditions set forth in detail in the Netsuite Agreement.  A true and correct copy of the Netsuite Agreement is attached hereto as Exhibit "A", and incorporated herein by this reference.

13. Specifically,  the  Netsuite  Agreement  provides  that NETSUITE will pay SKYYTEK fees, including, but not limited to:

(a)   Thirty Percent (30%) of gross revenue collected by NETSUITE for sales to, or renewals by, end user customers, net of refunds, cancellations and adjustments (collectively the "Base

1  Revenue  Payments").  Section  4.6  of  the  Netsuite  Agreement

2  provides  that  the  Base  Revenue  Payments  must  be  paid  within

3  15 days following the end of each month;

4        (b)  As provided in the Solution Provider Program Guidelines

5  (the "Guidelines"), upsell fees in the amount of Fifty Percent

6  (50%) of all fees paid by upgrades by end users of NETSUITE

7  products and services (the "Upsell Fees"). A true and correct

8  copy of the Guidelines are attached hereto as Exhibit "B", and

9  are  incorporated  herein  by  this  reference.       Because  the

10 Guidelines  are  incorporated  by  reference  into  the  Netsuite

11 Agreement,  the  Netsuite  Agreement  and  the  Guidelines  are

12 hereinafter collectively referred to as the "Netsuite Agreement";

13 and

14       (c)  As provided in the Guidelines, market development funds

15 in the amount of Five Percent (5%) of all fees paid for new

16 subscriptions and for upgrades by end users of NETSUITE products

17 and services (the "Market Development Funds").

18       14.  The Netsuite Agreement further provides that, if said

19 agreement is terminated, NETSUITE will continue to pay SKYTEK,

20 for a period of Three (3) years, Thirty Percent (30%) of all fees

21 paid by end user customers concerning the purchase, renewal or

22 upsell of any NETSUITE products or services (the "Recurring

23 Revenues").

24 The Onsite Agreement

25       15.  On or about February 7, 2008, SKYYTEK and Sipco

26 Components Group Inc., doing business as Onsite (collectively

27 "Onsite"), entered into a Partnership Program Agreement (the

28 "Onsite Agreement") wherein Onsite agreed to provide certain

1   services to SKYYTEK in return for certain payments and loans by

2   SKYYTEK, according to the terms and conditions set forth in

3   detail in the Onsite Agreement.   Section 10.2 of the Onsite

4   Agreement specifically provides that Onsite cannot do business

5   directly with NETSUITE, but could only do business through

6   SKYYTEK pursuant to SKYYTEK's relationship with NETSUITE.

7       16.   Plaintiff is informed and believes, and thereon

8   alleges, that at all times relevant hereto, NETSUITE was aware of

9   the terms of the Onsite Agreement.

10                      **FIRST CAUSE OF ACTION**
                         **(BREACH OF CONTRACT)**
11       **(Against Defendant, NETSUITE, and DOES 1 through 100)**

12      17.   Plaintiff refers to the allegations contained in

13   paragraphs 1 through 16, inclusive, and incorporates those

14   allegations herein as though fully set forth.

15      18.   On or about December 15, 2008, NETSUITE breached the

16   Netsuite Agreement by failing to pay SKYYTEK in full for the Base

17   Revenue Payments, Upsell Fees, Market Development Funds and

18   Recurring Revenues (collectively the "Revenues and Fees").

19      19.   Despite repeated demand by SKYYTEK, NETSUITE has failed

20   and refused, and continues to fail and refuse, to pay the

21   Revenues and Fees.

22      20.   In addition, those Revenues and Fees which were paid

23   were paid significantly late at the end of each quarter or other

24   relevant timeframe.

25      21.   Moreover, Plaintiff is informed and believes, and

26   thereon alleges, that Defendant, NETSUITE, breached the Netsuite

27   Agreement by:

28      (a) Failing to transfer licenses to SKYYTEK, when requested

-6-

1 to do so by customers;

2     (b) Improperly soliciting SKYYTEK clients, even thought the

3 Netsuite Agreement prohibits solicitation;

4     (c) Interfering with SKYYTEK's ability to support their own

5 in-house account through user groups;

6     (d) Not allowing end users to book orders starting in 2005;

7     (e) Failing to approve, and delaying the approval of,

8 SKYYTEK press releases; and

9     (f) Other acts and omissions.

10     22. SKYYTEK has performed all of its duties and obligations

11 pursuant to the Netsuite Agreement, except as prevented by

12 NETSUITE.

13     23. Due to NETSUITE's breaches of the Netsuite Agreement,

14 SKYYTEK has suffered damages in a sum according to proof at

15 trial, exceeding the jurisdictional minimum of this Court.

16     24. At all times relevant hereto, Defendant, NETSUITE, has

17 acted with malice and bad intent. By reason of the above-

18 mentioned unlawful acts by Defendant, NETSUITE, it has become

19 necessary for Plaintiff to employ the Williams Firm to commence

20 and prosecute this action, with the reasonable value of services

21 as counsel in this action to be determined by the Court at the

22

23 time of trial, to the extent attorneys fees are provided by the

24 Netsuite Agreement, by statute or otherwise by law, if at all.

25 **SECOND CAUSE OF ACTION**
**(TRADE LIBEL)**

26 **(Against Defendant, NETSUITE, and DOES 1 through 100)**

27     25. Plaintiff refers to the allegations contained in

28 paragraphs 1 through 24, inclusive, and incorporates those

1 allegations herein as though fully set forth.

2     26. At all relevant times, Plaintiff was a highly-regarded

3 provider of business process engineering and implementation of

4 on-demand and enterprise resource planning and customer

5 relationship management software systems in business. SKYYTEK is

6 an Accounting Technology VAR 100 winner three years in a row.

7 Until recently, SKYYTEK was NETSUITE's largest solution provider,

8 won NETSUITE's Partner of the Year for three years straight, and

9 was NETSUITE's only 5-star reseller ever.

10     27. As set forth in more detail below, NETSUITE, willfully,

11 without justification and without privilege, has published and

12 continues to publish as of the date of the filing of this

13 Complaint false and defamatory statements.

14     28. Plaintiff is informed and believes, and thereon

15 alleges, that starting in or about October 2005, and continuing

16 to the present, NETSUITE published statements, including, but not

17 limited to, statements asserting that:

18     (a) Users of NETSUITE products and services would no

19 longer be able to do business with SKYYTEK;

20     (b) It would be undesirable for users of NETSUITE

21 products and services to do business with Plaintiff or to

22 purchase Plaintiff's products and services; and

23     (c) Other disparaging, false and defamatory statements

24 (collectively the "Written Statements").

25     29. Plaintiff is informed and believes, and thereon

26 alleges, that Defendant, NETSUITE, willfully, without

27 justification and without privilege, published the Written

28 Statements and continues to publish such statements via email and

1 | other written forms.

2 |     30.  The publication of the Written Statements were made of
3 | and concerning  Plaintiff's products and services and were so
4 | understood by those who read the statements contained in the
5 | Written Statements.

6 |     31.  The Written Statements are false in their entirety as
7 | they pertain to Plaintiff.   At all relevant times, NETSUITE
8 | users could do business with SKYYTEK, and SKYTEK was a desirable
9 | company with which to do business.

10 |     32.  SKYYTEK demanded that NETSUITE cease further defamatory
11 | statements. However, Plaintiff is informed and believes, and
12 | thereon alleges, that NETSUITE continues to publish defamatory
13 | statements, including, but not limited to, the Written
14 | Statements.

15 |     33.  The Written Statements are libelous on their face. They
16 | disparage Plaintiff's business and goods and services because
17 | they clearly expose Plaintiff to loss of reputation, contempt and
18 | ridicule, impugning the reputation of Plaintiff and the
19 | competence of Plaintiff.  Alternatively, the Written Statements
20 | are defamatory because the language of the Written Statements
21 | implies that it is impossible or undesirable for potential
22 | customers to do business with Plaintiff or to purchase
23 | Plaintiff's products and services.

24 |     34.  Plaintiff is informed and believes, and thereon
25 | alleges, that the Written Statements were seen and read by
26 | persons worldwide who viewed NETSUITE's emails and other
27 | writings.

28 |     35.  As a proximate result of the Written Statements,

1   Plaintiff has suffered lost business, loss of customers, loss of

2   its reputation, shame, and mortification, all to its general

3   damage.

4   36.  Plaintiff is informed and believes, and thereon

5   alleges, that as a further proximate result of the Written

6   Statements, prospective customers have been deterred from buying

7   Plaintiff's products and services and from otherwise dealing with

8   Plaintiff, and Plaintiff has thereby suffered injury to its

9   business and direct special damages in a sum according to proof

10  at trial.

11  37.  Plaintiff is informed and believes, and thereon

12  alleges, that the Written Statements were published by Defendant,

13  NETSUITE, with malice, oppression and fraud in that such

14  Defendant intended to take customers and potential customers away

15  from Plaintiff and to drive Plaintiff out of business, and thus

16  Plaintiff seeks an award of punitive damages.

17  38.  Defendant, NETSUITE's, libel will continue to damage

18  Plaintiff unless NETSUITE is ordered, in addition to all other

19  remedies sought herein, to publish a complete retraction of the

20  false representations against Plaintiff, its products and

21  services, and Plaintiff's business reputation and goodwill.  Said

22  retraction must be published on Defendant, NETSUITE's, website,

23  in leading trade publications and local newspapers as determined

24  by the court and at NETSUITE's expense.

25  39.  At all times relevant hereto, Defendant, NETSUITE, has

26  acted with malice and bad intent. By reason of the above-

27  mentioned unlawful acts by Defendant, NETSUITE, it has become

28  necessary for Plaintiff to employ the Williams Firm to commence

-10-

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1 and prosecute this action, with the reasonable value of services

2 as counsel in this action to be determined by the Court at the

3 time of trial, to the extent attorneys fees are provided by the

4 Netsuite Agreement, by statute or otherwise by law, if at all.

### THIRD CAUSE OF ACTION
#### (LIBEL PER SE)
#### (Against Defendants, NETSUITE, and DOES 1 through 100)

40. Plaintiff refers to the allegations contained in paragraphs 1 through 39, inclusive, and incorporates those allegations herein as though fully set forth.

41. Plaintiff is informed and believes, and thereon alleges, that, on the above-described dates, Defendant, NETSUITE, published the Written Statements, all as set forth in detail hereinabove.

42. Plaintiff is informed and believes, and thereon alleges, that the Written Statements were read by numerous people worldwide. The Written Statements were libelous per se because they tend to injure Plaintiff in its business by imputing to Plaintiff a general disqualification in those respects that the business peculiarly requires and by imputing to Plaintiff characteristics that have a natural tendency to lessen the profits of Plaintiff's business.

43. The Written Statements are false in their entirety as they pertain to Plaintiff. At all relevant times, NETSUITE users could do business with SKYYTEK, and SKYTEK was a desirable company with which to do business.

44. The Written Statements are defamatory because the language of the Written Statements implies that it is impossible or undesirable for actual or potential customers to do business

-11-

1   with Plaintiff or to purchase Plaintiff's products or services.

2       45.  The Written Statements were made of and concerning

3   Plaintiff's products and services and were so understood by those

4   who read such statements.

5       46.  As a proximate result of the Written Statements,

6   Plaintiff has suffered lost business, loss of customers, loss of

7   its reputation, shame, and mortification, all to its general

8   damage.

9       47.  As a further proximate result of The Written

10  Statements, actual and prospective customers have been deterred

11  from buying Plaintiff's products and services and from otherwise

12  dealing with Plaintiff, and Plaintiff has thereby suffered injury

13  to its business and direct special damages in a sum according to

14  proof at trial.

15      48.  Plaintiff is informed and believes, and thereon

16  alleges, that the Written Statements were published by Defendants

17  with malice, oppression and fraud in that Defendants intended to

18  take customers and potential customers away from Plaintiff and to

19  drive Plaintiff out of business, and thus Plaintiff seeks an

20  award of punitive damages.

21      49.  Defendant's libel will continue to damage Plaintiff

22  unless it is ordered, in addition to all other remedies sought

23  herein, to publish a complete retraction of the false

24  representations against Plaintiff, its products and services, and

25  Plaintiff's business reputation and goodwill.  Said retraction

26  must be published in leading trade publications and local

27  newspapers as determined by the court and at Defendant,

28  NETSUITE's expense.

1    50.  At all times relevant hereto, Defendant, NETSUITE, has

2  acted with malice and bad intent. By reason of the above-

3  mentioned unlawful acts by Defendant, NETSUITE, it has become

4  necessary for Plaintiff to employ the Williams Firm to commence

5  and prosecute this action, with the reasonable value of services

6  as counsel in this action to be determined by the Court at the

7

8  time of trial, to the extent attorneys fees are provided by the

9  Netsuite Agreement, by statute or otherwise by law, if at all.

10                      **FOURTH CAUSE OF ACTION**
                            **(SLANDER PER SE)**
11          **(Against Defendants, NETSUITE, and DOES 1 through 100)**

12    51.  Plaintiff refers to the allegations contained in

13  paragraphs 1 through 50, inclusive, and incorporates those

14  allegations herein as though fully set forth.

15    52.  Plaintiff is informed and believes, and thereon

16  alleges, that at various times in 2005 through 2008, Defendant,

17  NETSUITE, made oral statements to customers and potential

18  customers, all as set forth in detail below.

19    53.  Specifically, Plaintiff is informed and believes, and

20  thereon alleges, that NETSUITE orally stated to customers and

21  potential customers that:

22       (a)  Users of NETSUITE products and services would no

23  longer be able to do business with SKYYTEK;

24       (b)  Users of NETSUITE products and services should not do

25  business with SKYYTEK;

26       (c)  SKYYTEK is not a desirable company to do business

27  with;

28       (d)  SKYYTEK does not provide good products and services;

1  and

2      (e)  Other  disparaging,  false  and  defamatory  statements

3  (hereinafter  collectively  the  "Oral  Publications").

4      54.  Plaintiff  is  informed  and  believes,  and  thereon

5  alleges,  that  the  Oral  Publications  were  heard  by  numerous

6  customers  and  prospective  customers  worldwide.   Plaintiff  is

7  further  informed  and  believes,  and  thereon  alleges,  that

8  Defendant  made  the  Oral  Publications  via  telephone  and  in  person

9  to  numerous  customers  and  prospective  customers  located

10  throughout  the  United  States  in  2005  through  2008.

11      55.  The  Oral  Publications  were  slanderous  per  se  because

12  they  tend  to  injure  Plaintiff  in  its  business  by  imputing  to

13  Plaintiff  a  general  disqualification  in  those  respects  that  the

14  business  peculiarly  requires  and  by  imputing  to  Plaintiff

15  characteristics  that  have  a  natural  tendency  to  lessen  the

16  profits  of  the  Plaintiff's  business,  including,  but  not  limited

17  to,  alleging  that  users  of  NETSUITE  products  and  services  should

18  not  do  business  with  SKYYTEK,  that  SKYYTEK  is  not  a  desirable

19  company  to  do  business  with,  SKYYTEK  does  not  provide  good

20  products  and  services  and  other  disparaging  statements.

21      56.  The  Oral  Publications  were  false  statements  because,  at

22  all  relevant  times,  NETSUITE's  users  could  have  done  business

23  with  SKYYTEK,  Plaintiff  was  highly  competent,  with  outstanding

24  products  and  services,  was  a  desirable  company  to  do  business

25  with,  and  was  the  best  choice  for  NETSUITE's  end  users.

26      57.  The  Oral  Publications  are  defamatory  because  the

27  language  of  such  statements  implies  that  it  is  undesirable  for

28  potential  customers  to  do  business  with  Plaintiff  or  to  purchase

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1   Plaintiff's products and services.

2   58.   The Oral Publications were made of and concerning the
3   Plaintiff's products and services and were so understood by those
4   who heard such statements.

5   59.   As  a  proximate  result  of  the  Oral  Publications,
6   Plaintiff has suffered lost profits, loss of its reputation,
7   shame, and mortification, all to its general damage.

8   60.   As a further proximate result of the Oral Publications,
9   actual and prospective customers have been deterred from buying
10  Plaintiff's products and services and from otherwise dealing with
11  Plaintiff, and Plaintiff has thereby suffered injury to its
12  business and direct special damages in a sum according to proof
13  at trial.

14  61.   The Oral Publications were published by Defendant,
15  NETSUITE, with malice, oppression and fraud in that Defendant,
16  NETSUITE, intended to take customers and potential customers away
17  from Plaintiff and to drive Plaintiff out of business, and thus
18  Plaintiff seeks an award of punitive damages.

19  62.   Defendant, NETSUITE's, slander will continue to damage
20  Plaintiff unless it is ordered, in addition to all other remedies
21  sought herein, to publish a complete retraction of the false
22  representations against Plaintiff, its products and services, and
23  Plaintiff's business reputation and goodwill.   Said retraction
24  must be published in leading trade publications and local
25  newspapers as determined by the court and at Defendant's expense.

26  63.   At all times relevant hereto, Defendant, NETSUITE, has
27  acted with malice and bad intent. By reason of the above-
28  mentioned unlawful acts by Defendant, NETSUITE, it has become

necessary for Plaintiff to employ the Williams Firm to commence and prosecute this action, with the reasonable value of services as counsel in this action to be determined by the Court at the time of trial, to the extent attorneys fees are provided by the Netsuite Agreement, by statute or otherwise by law, if at all.

**FIFTH CAUSE OF ACTION**
**(INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)**
**(Against Defendants, NETSUITE, and DOES 1 through 100)**

64. Plaintiff refers to the allegations contained in paragraphs 1 through 63, inclusive, and incorporates those allegations herein as though fully set forth.

65. Plaintiff was involved in numerous valid and existing business relationships with end user customers, and Defendant, NETSUITE, intentionally interfered with such relationships.

66. Plaintiff was also involved in a valid and existing contractual and business relationship with Onsite pursuant to the Onsite Agreement, and NETSUITE interfered with that relationship.

67. Defendant, NETSUITE, knew of the relationship between Plaintiff and Onsite, and between Plaintiff and its end user customers.

68. Defendant, NETSUITE, intentionally and wrongfully disrupted the relationships between Plaintiff, on the one hand, and ONSITE and Plaintiff's end user customers, on the other hand, by directly contracting with Onsite, and by stating to end user customers that users of NETSUITE products and services should not do business with SKYYTEK, that SKYYTEK is not a desirable company to do business with, SKYYTEK does not provide good products and services and other disparaging statements.

69. Defendant, NETSUITE fraudulently made these statements

-16-

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1  knowing that they were untrue, in violation of California

2  Business and Professions Code Section 17200 et seq., and other

3  statutes and common law.

4      70. Plaintiff is informed and believes, and thereon

5  alleges, that Defendant, NETSUITE, interfered with SKYYTEK's

6  business relations with its end user clients by various

7  additional acts and omissions, including, but not limited to:

8      (a) Contacting SKYYTEK customers and directly and/or

9  indirectly suggesting that they stop using SKYYTEK's products and

10  services and that they instead switch directly to using

11  Defendant, NETSUITE's, products and services;

12      (b) Refusing and/or delaying the issuance of press releases

13  pertaining to SKYYTEK;

14      (c) Interfering with SKYYTEK's ability to support their own

15  in-house account through user groups;

16      (d) Refusing to allow end users to book orders;

17      (e) Failing to transfer licenses or otherwise cooperate with

18  SKYYTEK customers when requested;

19      (f) Failing to timely approve SKYYTEK advertisements;

20      (g) Cloning SKYYTEK's accounts and using the data for

21  improper purposes by accessing these accounts; and

22      (h) Other acts and omissions.

23      71. As a result of Defendant, NETSUITE's, intentional acts,

24  the business relationships between Plaintiff, on the one hand,

25  and Onsite, Plaintiff's end user customers, and its other actual

26  or prospective customers, on the other hand, were disrupted in

27  that end user customers stopped doing business with Plaintiff and

28  started doing business with NETSUITE, and the other customers

severed business negotiations with Plaintiff and entered into agreements to use Defendant, NETSUITE's, services, instead of Plaintiff's.  In addition, Onsite stopped doing business with Plaintiff and started directly doing business with NETSUITE, in violation of the Onsite Agreement.

72.  Plaintiff was involved in a valid and existing contractual and business relationship with NETSUITE pursuant to the Netsuite Agreement, and with Onsite, pursuant to the Onsite Agreement.

73.  Defendant, NETSUITE's, interference with the business relationship between Plaintiff and its existing and prospective customers, and with Onsite, all as set forth hereinabove, has resulted in damage to Plaintiff in a sum according to proof at trial.

74.  As a further proximate result of Defendant, Netsuite's, conduct and the severance of initial and renewal negotiations by Plaintiff's prospective or existing customers, and by interference with Plaintiff's contracts and business relations with Onsite, Plaintiff estimates that it will suffer foreseeable future damages in a sum according to proof at trial.

75.  The aforementioned acts of Defendant, NETSUITE, were willful, oppressive, fraudulent and malicious.  Plaintiff is therefore entitled to punitive damages according to proof.

76.  Defendant, NETSUITE, threatens to and unless enjoined, will disrupt other business relationships between Plaintiff and its prospective customers or actual customers who use Plaintiff's goods and services, to Plaintiff's great and irreparable injury, for which damages would not afford adequate relief, in that they

-18-
VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1   would not completely compensate for the injury to Plaintiff's

2   business reputation and goodwill.

3       77.   Therefore, Plaintiff seeks injunctive relief to enjoin

4   Defendant, or anyone acting on Defendant, NETSUITE's, behalf,

5   from directly or indirectly interfering with Plaintiff's business

6   relationships with its existing or potential customers, or making

7   any false misrepresentations regarding Plaintiff's products or

8   services or otherwise harassing any customers or prospective

9   customers of Plaintiff concerning their business relationships

10  with Plaintiff.

11      78.   At all times relevant hereto, Defendant, NETSUITE, has

12  acted with malice and bad intent. By reason of the above-

13  mentioned unlawful acts by Defendant, NETSUITE, it has become

14  necessary for Plaintiff to employ the Williams Firm to commence

15  and prosecute this action, with the reasonable value of services

16

17  as counsel in this action to be determined by the Court at the

18  time of trial, to the extent attorneys fees are provided by the

19  Netsuite Agreement, by statute or otherwise by law, if at all.

20                          **SIXTH CAUSE OF ACTION**
        **(INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**
21          **(Against Defendants, NETSUITE, and DOES 1 through 100)**

22      79.   Plaintiff refers to the allegations contained in

23  paragraphs 1 through 78, inclusive, and incorporates those

24  allegations herein as though fully set forth.

25      80.   Plaintiff has economic relationships with Onsite and

26  with numerous potential customers of its products and services,

27  and such relationships include the probability of future economic

28  benefit.

1    81.  At all relevant times, Defendant, NETSUITE, knew or

2  should have known of the existence of such relationships.

3    82.  Defendant, NETSUITE, intentionally and wrongfully

4  disrupted the relationships between Plaintiff and its potential

5  customers by acts, including, but not limited to, stating to such

6  potential customers of Plaintiff that users of NETSUITE products

7  and services should not do business with SKYYTEK, that SKYYTEK is

8  not a desirable company to do business with, SKYYTEK does not

9  provide good products and services and other disparaging

10  statements.

11    83.  Plaintiff is informed and believes, and thereon

12  alleges, that Defendant, NETSUITE, interfered with SKYYTEK's

13  business relations with its prospective end user clients by

14  various additional acts and omissions, including, but not limited

15  to:

16    (a)  Contacting SKYYTEK customers and directly and/or

17  indirectly suggesting that they stop using SKYYTEK's products and

18  services and that they instead  switch directly to using

19  Defendant, NETSUITE's, products and services;

20    (b) Refusing and/or delaying the issuance of press releases

21  pertaining to SKYYTEK;

22    (c) Interfering with SKYYTEK's ability to support their own

23  in-house account through user groups;

24    (d) Refusing to allow end users to book orders;

25    (e) Failing to transfer licenses or otherwise cooperate with

26  SKYYTEK customers when requested;

27    (f)  Failing to timely approve SKYYTEK advertisements;

28    (g)  Cloning SKYYTEK's accounts and using the data for

1   improper purposes by accessing these accounts; and

2       (h) Other acts and omissions.

3      84. NETSUITE also interfered with Plaintiff's relationship

4   with Onsite.

5      85. Due to Defendant, NETSUITE's, acts, there has been an

6   actual disruption of Plaintiff's relationships with Onsite and

7   with its potential customers.

8      86. As a result of Defendant NETSUITE's, intentional acts,

9   the business relationships between Plaintiff, and its prospective

10   customers were disrupted in that such potential customers severed

11   their business negotiations with Plaintiff and entered into

12   agreements to use Defendant, NETSUITE's services, instead of

13   Plaintiff's. Also as a result of Defendant, NETSUITE's,

14   intentional acts, the business relationship between Plaintiff and

15   Onsite was disrupted in that Onsite no longer does business

16   exclusively with SKYYTEK, and instead does business directly with

17   NETSUITE.

18      87. Defendant, NETSUITE's, interference with the business

19   relationship between Plaintiff, on the one hand, and Onsite and

20   its prospective customers, on the other hand, has resulted in

21   damage to Plaintiff in a sum according to proof at trial.

22      88. As a further proximate result of Defendant, NETSUITE's,

23   conduct and the severance of Plaintiff's relationship with Onsite

24   and with initial and renewal negotiations by Plaintiff's

25   prospective customers, Plaintiff estimates that it will suffer

26   foreseeable future damages in a sum according to proof at trial.

27      89. The aforementioned acts of Defendant, NETSUITE, were

28   willful, oppressive, fraudulent and malicious. Plaintiff is

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

therefore entitled to punitive damages according to proof.

90.   Defendant, NETSUITE, threatens to and unless enjoined, will disrupt the business relationships between Plaintiff and its prospective customers, to Plaintiff's great and irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

91.   Therefore, Plaintiff seeks injunctive relief to enjoin Defendant, NETSUITE, or anyone acting on NETSUITE's behalf, from directly or indirectly interfering with Plaintiff's business relationships with its potential customers, or making any false misrepresentations regarding Plaintiff's products or services or otherwise harassing any customers or prospective customers of Plaintiff concerning their business relationships with Plaintiff.

92.   At all times relevant hereto, Defendant, NETSUITE, has acted with malice and bad intent. By reason of the above-mentioned unlawful acts by Defendant, NETSUITE, it has become necessary for Plaintiff to employ the Williams Firm to commence and prosecute this action, with the reasonable value of services as counsel in this action to be determined by the Court at the time of trial, to the extent attorneys fees are provided by the Netsuite Agreement, by statute or otherwise by law, if at all.

### SEVENTH CAUSE OF ACTION
**(NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS)**
**(Against Defendants, NETSUITE, and DOES 1 through 100)**

93.   Plaintiff refers to the allegations contained in paragraphs 1 through 92, inclusive, and incorporates those allegations herein as though fully set forth.

94. Plaintiff was involved in numerous valid and existing business relationships with customers, and with Onsite, and Defendant, NETSUITE, interfered with such relationships, all as set forth in detail hereinabove.

95. Defendant, NETSUITE, knew or should have known of the relationships between Plaintiff, on the one hand, and its customers and Onsite, on the other hand.

96. Defendant, NETSUITE, negligently disrupted the relationships between Plaintiff, on the one hand, and its existing and prospective customers, on the other hand, by stating to such customers directly or through Defendant, NETSUITE's, agents or representatives that users of NETSUITE products and services should not do business with SKYYTEK, that SKYYTEK is not a desirable company to do business with, SKYYTEK does not provide good products and services and other disparaging statements. Defendant, NETSUITE, made these statements without any reasonable belief that the statements were true.

97. Plaintiff is informed and believes, and thereon alleges, that Defendant, NETSUITE, interfered with SKYYTEK's business relations with its end user clients by various additional acts and omissions, including, but not limited to:

(a) Contacting SKYYTEK customers and directly and/or indirectly suggesting that they stop using SKYYTEK's products and services and that they instead switch directly to using Defendant, NETSUITE's, products and services;

(b) Refusing and/or delaying the issuance of press releases pertaining to SKYYTEK;

(c) Interfering with SKYYTEK's ability to support their own

1  in-house account through user groups;

2          (d) Refusing to allow end users to book orders;

3          (e) Failing to transfer licenses or otherwise cooperate with

4  SKYYTEK customers when requested;

5          (f)  Failing to timely approve SKYYTEK advertisements;

6          (g) Cloning SKYYTEK's accounts and using the data for

7  improper purposes by accessing these accounts; and

8          (h) Other acts and omissions.

9          98.  In addition, Defendant, NETSUITE, negligently disrupted

10 the relationships between Plaintiff, on the one hand, and

11 ONSITE, on the other hand.

12         99. As a result of Defendants' negligent acts, the business

13 relationships between Plaintiff, on the one hand, and Plaintiff's

14 existing and prospective customers and with Onsite, on the other

15 hand, were disrupted in that the existing or prospective

16 customers severed business negotiations with Plaintiff and

17 entered into agreements to use Defendant, NETSUITE's, services,

18 instead of Plaintiff's, and Onsite stopped doing business with

19 Plaintiff, and, instead, started to do business directly with

20 NETSUITE.

21         100. Defendants' interference with the business relationship

22 between Plaintiff and its customers has resulted in damage to

23 Plaintiff in a sum according to proof at trial.

24         101. As a further proximate result of Defendant, NETSUITE's,

25 conduct and the severance of negotiations by Plaintiff's

26 prospective or existing customers, Plaintiff estimates that it

27 will suffer foreseeable future damages in a sum according to

28 proof at trial.

1    102. Defendant, NETSUITE, threatens to and unless enjoined,

2  will disrupt other business relationships between Plaintiff and

3  its other customers who use Plaintiff's goods and services, to

4  Plaintiff's great and irreparable injury, for which damages would

5  not afford adequate relief, in that they would not completely

6  compensate for the injury to Plaintiff's business reputation and

7  goodwill.

8    103. Therefore, Plaintiff seeks injunctive relief to enjoin

9  Defendants, or anyone acting on Defendant, NETSUITE's, behalf,

10  from directly or indirectly interfering with Plaintiff's business

11  relationships with its existing or potential customer, or making

12  any false misrepresentations regarding Plaintiff's products or

13  services or otherwise harassing any customers of Plaintiff

14  concerning their business relationships with Plaintiff.

15    104. At all times relevant hereto, Defendant, NETSUITE, has

16  acted with malice and bad intent. By reason of the above-

17  mentioned unlawful acts by Defendant, NETSUITE, it has become

18  necessary for Plaintiff to employ the Williams Firm to commence

19  and prosecute this action, with the reasonable value of services

20  as counsel in this action to be determined by the Court at the

21

22  time of trial, to the extent attorneys fees are provided by the

23  Netsuite Agreement, by statute or otherwise by law, if at all.

24                    **EIGHTH CAUSE OF ACTION**
   **(NEGLIGENT INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**
25       **(Against Defendants, NETSUITE, and DOES 1 through 100)**

26    105. Plaintiff refers to the allegations contained in

27  paragraphs 1 through 104, inclusive, and incorporates those

28  allegations herein as though fully set forth.

106. Plaintiff has economic relationships with Onsite and with numerous potential customers of its products and services, and such relationships include the probability of future economic benefit.

107. At all relevant times, Defendant, NETSUITE, knew or should have known of the existence of such relationships.

108. Defendant, NETSUITE, negligently and wrongfully disrupted the relationships between Plaintiff, on the one hand, and Onsite and Plaintiff's potential customers, on the other hand, by acts, including, but not limited to, stating to such potential customers that users of NETSUITE products and services should not do business with SKYYTEK, that SKYYTEK is not a desirable company to do business with, SKYYTEK does not provide good products and services and other disparaging statements.

109. Plaintiff is informed and believes, and thereon alleges, that Defendant, NETSUITE, interfered with SKYYTEK's business relations with its prospective customers by various additional acts and omissions, including, but not limited to:

(a) Contacting SKYYTEK customers and directly and/or indirectly suggesting that they stop using SKYYTEK's products and services and that they instead switch directly to using Defendant, NETSUITE's, products and services;

(b) Refusing and/or delaying the issuance of press releases pertaining to SKYYTEK;

(c) Interfering with SKYYTEK's ability to support their own in-house account through user groups;

(d) Refusing to allow end users to book orders;

(e) Failing to transfer licenses or otherwise cooperate with

1    SKYYTEK customers when requested;

2          (f)   Failing to timely approve SKYYTEK advertisements;

3          (g)   Cloning SKYYTEK's accounts and using the data for

4    improper purposes by accessing these accounts; and

5          (h)   Other acts and omissions.

6          110. Due to Defendant, NETSUITE's, acts, there has been an

7    actual disruption of Plaintiff's relationships with its potential

8    customers and with Onsite.

9          111. As a result of Defendant, NETSUITE's, negligent acts,

10   the business relationships between Plaintiff, on the one hand,

11   and Onsite and Plaintiff's prospective customers, on the other

12   hand, were disrupted in that such potential customers severed

13   their business negotiations with Plaintiff and entered into

14   agreements to use Defendant NETSUITE's services, instead of

15   Plaintiff's, and Onsite started doing business directly with

16   NETSUITE.

17         112. Defendant, NETSUITE's, interference with the business

18   relationship between Plaintiff and Onsite, and Plaintiff and its

19   prospective customers has resulted in damage to Plaintiff in a

20   sum according to proof at trial.

21         113. As a further proximate result of Defendant, NETSUITE's,

22   conduct and the severance of initial and renewal negotiations by

23   Plaintiff's prospective customers, Plaintiff estimates that it

24   will suffer foreseeable future damages in a sum according to

25   proof at trial.

26         114. Defendant, NETSUITE,  threatens to and unless enjoined,

27   will disrupt the business relationships between Plaintiff and its

28   prospective customers, to Plaintiff's great and irreparable

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiffs business reputation and goodwill. Therefore, Plaintiff seeks a permanent injunction to enjoin Defendant, NETSUITE, or anyone acting on said Defendant's behalf, from directly or indirectly interfering with Plaintiff's business relationships with its potential customers, or making any false misrepresentations regarding Plaintiff's products or services or otherwise harassing any customers or prospective customers of Plaintiff concerning their business relationships with Plaintiff.

115. At all times relevant hereto, Defendant, NETSUITE, has acted with malice and bad intent. By reason of the above-mentioned unlawful acts by Defendant, NETSUITE, it has become necessary for Plaintiff to employ the Williams Firm to commence and prosecute this action, with the reasonable value of services as counsel in this action to be determined by the Court at the time of trial, to the extent attorneys fees are provided by the Netsuite Agreement, by statute or otherwise by law, if at all.

**NINTH CAUSE OF ACTION**
**(UNFAIR COMPETITION)**
**(Against Defendants, NETSUITE, and DOES 1 through 100)**

116. Plaintiff refers to the allegations contained in paragraphs 1 through 115, inclusive, and incorporates those allegations herein as though fully set forth.

117. Defendant, NETSUITE, committed interference with contractual and economic relations, all as alleged hereinabove, for the purpose of putting Plaintiff out of business and/or taking Plaintiff's customers. In addition, Defendant, NETSUITE,

1   committed defamation for the for the purpose of putting Plaintiff

2   out of business and/or taking Plaintiff's customers.

3       118. In addition, Plaintiff is informed and believes, and

4   thereon alleges, that Defendant, NETSUITE, committed other acts

5   of unfair competition and unfair business practices, including,

6   but not limited to:

7       (a) Contacting SKYYTEK customers and directly and/or

8   indirectly suggesting that they stop using SKYYTEK's products and

9   services and that they instead switch directly to using

10  Defendant, NETSUITE's, products and services;

11      (b) Refusing and/or delaying the issuance of press releases

12  pertaining to SKYYTEK;

13      (c) Interfering with SKYYTEK's ability to support their own

14  in-house account through user groups;

15      (d) Refusing to allow end users to book orders;

16      (e) Failing to transfer licenses or otherwise cooperate with

17  SKYYTEK customers when requested;

18      (f) Cloning SKYYTEK's accounts and using the data for

19  improper purposes by accessing these accounts;

20      (g) Breaching SKYYTEK's privacy;

21      (h) Accessing personal data of SKYYTEK personnel; and

22      (i) Other acts and omissions.

23      119. Such actions are unlawful, unfair and fraudulent and

24  deceptive business acts or practices which thus violate

25  California Business and Professions Code Sections 17200 et seq.

26      120. Defendant, NETSUITE, threatens to and unless

27  restrained, will continue to wrongfully interfere with

28  Plaintiff's existing and prospective customers and to defame

-29-

1  Plaintiff orally and in writing.

2      121. As a proximate result of the above-mentioned acts of

3  Defendant, NETSUITE, Plaintiff has been deprived of the patronage

4  of a large number of its actual and potential customers, all to

5  its damage in a sum according to proof at trial.

6      122. At all times relevant hereto, Defendant, NETSUITE, has

7  acted with malice and bad intent. By reason of the above-

8  mentioned unlawful acts by Defendant, NETSUITE, it has become

9  necessary for Plaintiff to employ the Williams Firm to commence

10 and prosecute this action, with the reasonable value of services

11 as counsel in this action to be determined by the Court at the

12 time of trial, to the extent attorneys fees are provided by the

13

14 Netsuite Agreement, by statute or otherwise by law, if at all.

15              **TENTH CAUSE OF ACTION**
                    **(INJUNCTIVE RELIEF)**
16      **(Against Defendants, NETSUITE, and DOES 1 through 100)**

17     123. Plaintiff  refers  to  the  allegations  contained  in

18 paragraphs  1  through  122,  inclusive,  and  incorporates  those

19 allegations herein as though fully set forth.

20     124. Plaintiff  is  informed  and  believes,  and  thereon

21 alleges,  that  unless  restrained  and  enjoined,  Defendant,

22 NETSUITE's, conduct will cause Plaintiff to suffer irreparable

23 damages, injury, and harm, because Defendant, NETSUITE, will

24 continue to wrongfully publish false and defamatory statements

25 concerning  Plaintiff  and  its  products  and  services,  and  to

26 wrongfully interfere with Plaintiff's business relationships.

27     125.  Plaintiff has no plain, adequate, or speedy remedy at

28 law  to  protect  its  business  reputation  and  to  maintain  its

1   customer relationships, because it is difficult or impossible to

2   set the amount of damages which Plaintiff will suffer if

3   Defendant, NETSUITE, is not restrained, and because Plaintiff

4   will be forced to institute a multiplicity of suits to obtain

5   adequate compensation for NETSUITE's wrongdoing.

6       126.   Plaintiff requests that the Court adjudge that

7   Defendant, Netsuite, and each of its agents, employees,

8   attorneys, successors, assigns, affiliates, and joint venturers

9   and any person(s) in active concert or participation with it,

10  and/or any person(s) acting for, with, by, through or under it,

11  be enjoined and restrained at first during the pendency of this

12  action and thereafter permanently from engaging, committing or

13  performing, directly or indirectly, any or all of the following

14  acts:

15          (a)   Accessing personal data of SKYYTEK personnel;

16          (b)   Cloning SKYYTEK's accounts;

17          (c)   Making any written or oral statements which state

18  or imply that users of NETSUITE products and services cannot or

19  should not do business with SKYYTEK, or that SKYYTEK is not a

20  desirable company to do business with;

21          (d)   Making any other false written or oral statements

22  of any nature whatsoever concerning Plaintiff or its products and

23  services;

24          (e)   Interfering with SKYYTEK's contractual relations

25  with its customers;

26          (f)   Interfering with SKYYTEK's prospective business

27  relations with its current and potential customers; or

28          (g)   Contacting SKYYTEK customers and directly and/or

VERIFIED COMPLAINT OF SKYYTEK CORPORATION

1   indirectly suggesting that they stop using SKYYTEK's products and

2   services or that they instead switch directly to using Defendant,

3   NETSUITE's, products and services.

4       WHEREFORE, Plaintiff prays for judgment against Defendants,

5   and each of them, as follows:

6       1. For damages in a sum according to proof;

7       2. For an award to Plaintiff of prejudgment and postjudgment

8   interest and costs of suit, including reasonable attorneys' fees

9   to the extent attorneys fees are provided by the Netsuite

10  Agreement, by statute or otherwise by law;

11      3. For exemplary and punitive damages in a sum according to

12  proof at the time of trial;

13      4. For a temporary restraining order, preliminary injunction

14  and permanent injunction all enjoining Netsuite, and each of its

15  agents, employees, attorneys, successors, assigns, affiliates,

16  and joint venturers and any person(s) in active concert or

17  participation with it, and/or any person(s) acting for, with, by,

18  through or under it, from engaging, committing or performing,

19  directly or indirectly, any or all of the following acts:

20          (a)   Accessing personal data of SKYYTEK personnel;

21          (b)   Cloning SKYYTEK's accounts;

22          (c)   Making any written or oral statements which state

23  or imply that users of NETSUITE products and services cannot or

24  should not do business with SKYYTEK, or that SKYYTEK is not a

25  desirable company to do business with;

26          (d)   Making any other false written or oral statements

27  of any nature whatsoever concerning Plaintiff or its products and

28  services;

1      (e)   Interfering  with  SKYYTEK's  contractual  relations

2  with its customers;

3      (f)   Interfering  with  SKYYTEK's  prospective  business

4  relations with its current and potential customers; or

5      (g)   Contacting  SKYYTEK customers  and  directly and/or

6  indirectly suggesting that they stop using SKYYTEK's products and

7  services or that they instead switch directly to using Defendant,

8  NETSUITE's, products and services.

9      5.  For  an  injunction  commanding  Defendant,  NETSUITE,  as

10  follows:

11      (a)   that  Defendant,  NETSUITE,  shall  publish  complete

12  retractions of the false representations against Plaintiff, its

13  products and services, and Plaintiff's business reputation and

14  goodwill.   Said  retractions  shall  be  published  on  Defendant's

15  websites, in leading trade publications and local newspapers as

16  determined by the court and at Defendant's expense; and

17      6. For  such  other  and  further  relief  as  the  Court  may  deem

18  just and proper.

19                              Respectfully Submitted,

20

21

22  Dated:     February 4, 2009

23                              D. Alexander Floum, Esq.
                               THE WILLIAMS FIRM
24                              1850 Mt. Diablo Blvd., Suite 340
                               Walnut Creek, California 94596
25                              Telephone:  (925) 933-9800
                               Facsimile:  (925) 933-9810
26                              Email: afloum@williams-firm.com

27                              Attorneys for Plaintiff, SKYYTEK
                               CORPORATION, a  Florida corporation

28

1

## DEMAND FOR JURY TRIAL

2

3

SKYYTEK demands that this action be tried to a jury.

4

5

6

                               Respectfully Submitted,

7

8

9

Dated:     February 4, 2009

10
                              D. Alexander Floum, Esq.

11
                              THE WILLIAMS FIRM
                              1850 Mt. Diablo Blvd., Suite 340

12
                              Walnut Creek, California 94596
                              Telephone:  (925) 933-9800

13
                              Facsimile:  (925) 933-9810
                              Email: afloum@williams-firm.com

14

15
                              Attorneys for Plaintiff, SKYYTEK
                              CORPORATION, a  Florida corporation

16

17

18

19

20

21

22

23

24

25

26

27

28

-34-

VERIFICATION

I, Ray Tetlow, am the Chief Executive Officer of SKYYTEK CORPORATION, a Florida corporation ("SKYYTEK"), Plaintiff to this action, and am authorized to make this verification on behalf of SKYYTEK, and I make this verification for that reason.   I have read the foregoing Verified Complaint and know its contents.   The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 5th day of February, 2009, at ___Miami___.
Florida.

_____
Ray Tetlow

VERIFIED COMPLAINT OF SKYYTEK CORPORATION